THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SIGMUND WORTHERLY, Appellant.

First Department, May 17, 1979

APPEARANCES OF COUNSEL

*Katherin K. Hudson* of counsel *(William E. Hellerstein,* attorney), for appellant.

*William M. Hannay* of counsel *(Bruce Allen* with him on the brief; *Robert M. Morgenthau, District Attorney),* for respondent.

**OPINION OF THE COURT**

SILVERMAN, J.

Defendant appeals from a judgment of the Supreme Court, New York County, convicting him on jury verdict of assault in the second degree (Penal Law, § 120.05), and criminal possession of a weapon in the third degree (Penal Law, § 265.02) and sentencing him thereon.

■ 1. The testimony of the complaining witness, the victim Wilson, that about three minutes after the assault, he told a friend Goodwin that "Ziggy stabbed me", even though in response to a question, was admissible under the spontaneous declaration rule. (Richardson, Evidence [10th ed], § 281 *et seq.)* The victim was bleeding from numerous stab wounds and was dizzy. The leading case on spontaneous declarations, *People v Del Vermo* (192 NY 470), involved an answer to a question. The recent thinking in this area has favored a liberal attitude toward the admissibility of such a statement. (See *People v Arnold,* 34 NY2d 548; *Vincent v Thompson,* 50 AD2d 211, 224; Fed Rules, Evidence, rule 803, subds [1], [2], in US Code, tit 28, Appendix.) In *People v Arnold (supra,* p 549), the Court of Appeals, considering a statement made by a victim who had driven five miles after the assault, went out of its way to deliver this observation: "Were it necessary to determine whether the deceased's utterance fit within an exception to the hearsay rule, it is observed that this court has in recent years emphasized that the hearsay doctrine has been too restrictively applied to exclude otherwise reliable evidence from the jury".

In the present case, the Trial Judge held a hearing on the point and found as a fact that the statement constituted a spontaneous utterance. Finally, on this point, we note that the declarant himself testified at the trial and was fully available for cross-examination as to the facts of the crime and as to the statement. (Cf. *Vincent v Thompson, supra.)*

■ 2. Appellant urges that it was error to receive the

testimony of the Police Officer Brady to the effect that Goodwin told him that the victim had told Goodwin that it was Ziggy who had assaulted the victim. If this had been brought out by the prosecution on direct examination, it would of course have been error, not because the victim's statement properly proved would have been inadmissible, but because the making of the statement was not proved by competent evidence in that the police officer's only knowledge of it came from a third person, Goodwin, who did not testify.

But the matter was not brought out on direct examination, it was brought out on re-redirect examination. It was admissible under the familiar rule that if a party inquires on cross-examination into part of a conversation, he "opens the door" to the other party's bringing out the rest of the conversation for the purpose of explaining or qualifying the conversation. (Richardson, Evidence [10th ed], § 523.)

In the case at bar, defendant, on cross-examination of the police officer sought to show not only that the UF 61 report, the initial police department complaint report, described the perpetrator as having an earring in his left ear (which defendant did not), but he also tried to suggest that Goodwin had indicated that the information came from Wilson. Thus, it appearing clearly both from direct examination and cross-examination that the UF 61 report was based on a conversation by the police officer with Goodwin (who had not seen the assault) and not with Wilson, defendant's cross-examination went on to bring out the description of the perpetrator in the UF 61 report as having an earring in his left ear and thereafter asked:

"Q. Did Mr. Goodwin tell you that his information came from Keith Wilson?

"A. Yes, he did.

"Q. And part of that information was the earring on the left ear?

"A. No."

On re-cross-examination, the defense again tried to suggest that the information about the earring came from the victim Wilson. Defendant's attorney asked:

"Q. Mr. Goodwin told you that he had spoken to Keith Wilson?

"A. That's correct.

"Q. And he told you that he thought that another person on

St. Nicholas Avenue with an earring had been the perpetrator?

"A. You'd have to rephrase that question.

"Q. And he told you after having spoken—after he said—withdraw again.

"He told you, while describing the perpetrator, that he thought that a person who had an earring who hung around St. Nicholas Avenue was the perpetrator?

"A. That's right."

The prosecution now had the right to rebut the suggestion that defendant's attorney was seeking to make that Goodwin had indicated to the police officer that Wilson had said that his assailant was the wearer of the earring, i.e., not the defendant. (Later, on summation, defendant's attorney explicitly made that argument.) The prosecution thus, on re-redirect examination had the right to and did ask whether Goodwin had told the police officer whether Wilson had told Goodwin the name of his assailant and what that name was, which turned out to be Ziggy.

Of course this whole inquiry initiated by defendant's attorney as to the UF 61 report was an inquiry into hearsay; and it opened the door to the rest of the conversation.

In *People v Buchanan* (145 NY 1, 24-25), the Court of Appeals said: "If the defendant chose to open an inquiry as to a conversation between the witness and the coroner, it was proper enough and just that the jury should be placed in possession of what the conversation actually was. I understand the rule to be that a witness may be re-examined by the party calling him upon all topics on which he has been cross-examined, for the purpose of explaining any new facts which came out * * * Even if the cross-examination has been as to facts not admissible in evidence, the rule seems to be that the witness may be re-examined as to evidence so given. * * * In this case the additional reason exists that the request for the actual conversation, as to which the witness has been cross-interrogated, was proper, in order to rebut the inference suggested concerning the motives of the witness. * * * The prosecution was justified in negativing the imputations, or inferences, the defendant might claim to be deducible from the facts elicited. It was competent to elicit an explanation of the reasons of the witness and the source of the information on which his statements were based. Having entered upon

that line of examination, the defense may not complain of its being pursued by the People, in order that the jury might be able to judge for themselves as to the character and motives of the witness."

■ 3. Defendant objects to the admission in evidence of the testimony of the victim Wilson that the reason that he had told the defendant's attorney in a pretrial interview that he was not sure whether defendant was the one who had stabbed him, which the victim said was a lie, was because he was in fear, due to the fact that his sister and brothers had been stopped on the street and told that Wilson had better not testify or something would happen; he received an offer of money if he dropped the case, which he said he would think about and while he was apparently "thinking" about it, the apartment which he shared with his family was fire bombed, and his parents had seen two Molotov cocktails thrown into the window of the apartment. The testimony was properly received for the purpose of explaining the inconsistent statements brought out by the defendant's attorney. In *People v Buchalter* (289 NY 181), the witness was permitted to explain that he had given untruthful answers due to the fear of the defendant because of the fact of having been shot following his testimony before the Grand Jury. The court said (pp 202-203):

"It was necessary and proper for the District Attorney to elicit the reason in the witness' mind for his conduct. The 'impeached witness may always endeavor to explain away the effect of the supposed inconsistency by relating whatever circumstances would naturally remove it.' * * *

"The important factor was the reason which operated upon Rubin's mind. That reason might be a good one or a poor one. It might have a foundation in fact or no foundation at all. * * * All it was offered to prove was that that reason, good or bad, motivated the conduct of the witness. In this instance he had testified before the grand jury and had been promptly shot through the head. He believed that Rosen had been killed because he had not kept quiet. * * * It was Rubin's state of mind that was being inquired into. That state of mind was no proof that Buchalter had anything to do with the shooting of Rubin. No one claimed it was proof of that fact. But that belief did enter into the mind of Rubin and that was the reason he said he did not tell the truth to Assistant District Attorney McCarthy. The question was a proper one."

In the present case, the testimony was followed by explicit

limiting instructions by the Trial Judge to the jury pointing out that it was allowed only to show the state of Wilson's mind, not for the purpose of showing that the defendant who was in jail at that time did this but to show the reason why Wilson made the allegedly false statement to the District Attorney.

It is not a complete answer to say that Wilson's fear could be adequately inferred from the fact that he claimed to have been stabbed by the defendant. As the cases point out, all the facts could be brought out, and here, absent the evidence of the other incidents, the jury might think there was no reason for Wilson to fear any harm as the defendant was in jail.

■ 4. Defendant-appellant contends that the trial court erred in charging the jury on its duty not to draw any unfavorable inferences from the defendant's failure to testify because no request was made for such a charge and because the court went into unnecessary length on the point. The objection is not one that appellant can make. It is plain that defendant's attorney wanted the court to give such a charge and to emphasize it. He deliberately mentioned the defendant's failure to testify and the duty not to draw an inference in his summation, told the jury that they had made that pledge and that it was the law and that "his Honor will give it to you." And after the court gave the charge, in our view at unnecessary length but apparently the way defendant wanted it, there was no objection or exception. However, we do take this opportunity to remind the Trial Bench of the often-repeated admonition by the Court of Appeals with respect to the no inference charge that: " 'In the trial of a criminal case it can never be necessary to add anything to the plain and simple language of the statute' " *(People v McLucas,* 15 NY2d 167, 171, quoting *People v Fitzgerald,* 156 NY 253, 266).

■ 5. Finally, the court stated to the jury, among other things, with respect to the testimony as to the character of the complaining witness, that the complaining witness "is not on trial in this case", and further elaborated on this by saying that the prosecution was in the name of the People and that it was the defendant who was on trial. We have previously disapproved of this language emphasizing the fact that the victim was not on trial. *(People v Leahy,* 60 AD2d 558; *People v Hurel,* 60 AD2d 537.)* While this language is formally correct, it is subject to misconstruction. But we have not yet held this language to be reversible error. In the present case,

although the court's charge did contain the disapproved of language, the court went on in the same passage to say that the complaining witness "is a witness, and you must examine carefully all of his testimony and all of the testimony in this case in determining whether you believe him or not." And after pointing out that the People have to take the witnesses as they find them, the court said, "juries, naturally, may want to scrutinize carefully such evidence before making up their minds and placing reliance upon it. That's what you must do in the case of the testimony of this witness."

The judgment of the Supreme Court, New York County (SCOTT, J.), rendered September 26, 1977, convicting defendant on jury verdict of assault in the second degree (Penal Law, § 120.05), and criminal possession of a weapon in the third degree (Penal Law, § 265.02) and sentencing him thereon, should be affirmed.

BIRNS, J. P., FEIN, LANE and BLOOM, JJ., concur.

Judgment, Supreme Court, New York County, rendered on September 26, 1977, affirmed.